## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| MOSAID TECHNOLOGIES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 1:25-cv-677 |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| INTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff MOSAID Technologies Inc. ("Plaintiff" or "MOSAID") files this Complaint for Patent Infringement against Defendant Intel Corporation ("Intel"), alleging as follows:

## NATURE OF SUIT

1.    This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## PARTIES, JURISDICTION, AND VENUE

2.    This action arises under the patent laws of the United States, 35 U.S.C. §§ 101, *et seq.* This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## I.    MOSAID

3.    MOSAID is a Canadian company having a principal place of business at 515 Legget Drive, Suite 100, Ottawa, ON, Canada. MOSAID's subsidiary, Conversant Intellectual Property Management Corp., is located at 5830 Granite Parkway #100-247, Suite 247, Plano, Texas 75024.

4.    MOSAID was founded in 1975 by engineers Richard Foss and Robert Harland. MOSAID focused its early efforts on inventing ways to improve Dynamic Random-Access

Memory (DRAM) semiconductor chips. MOSAID's engineers also designed and built test equipment for debugging prototype memory chips.

5.      MOSAID is now a leading patent management company with a world-class licensing team and an enviable record of success. MOSAID's success is defined by the numerous licenses it has signed with industry leaders. MOSAID prides itself on its patent expertise, a determination to engage in meaningful negotiation, and a commitment to transparency and the principled enforcement of high-quality patents.

6.      MOSAID is the assignee and owns all right, title, and interest to United States Patent Nos. 7,476,957 (the "'957 Patent"), 7,514,757 (the "'757 Patent"), 9,349,655 (the "'655 Patent"), 8,809,940 ("the '940 Patent"), 8,440,517 ("the '517 Patent"), 9,209,300 ("the '300 Patent"), 9,379,215 ("the '215 Patent"), 9,716,091 ("the '091 Patent"), 7,842,577 ("the '577 Patent"), 8,338,909 ("the '909 Patent"), and 9,564,433 ("the '433 Patent"). These patents are collectively referred to herein as the "Asserted Patents."

## II.    <u>INTEL</u>

7.      On information and belief, Intel is a corporation organized and existing under the laws of Delaware, and is located at 2200 Mission College Boulevard, Santa Clara, California 95054. Intel conducts business in Texas and has a registered agent in Texas where it may be served with process via its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201.

8.      On information and belief, Intel makes, uses, offers for sale, sells in the United States, and/or imports into the United States, a variety of semiconductor devices (such as, for example, processors, graphics, chipsets, FPGAs, server products, and GPUs) with active circuitry made using Intel FinFET Low Power ("22FFL"), Intel 16, Intel 10 nm, Intel 7, Intel 4, and Intel 3 process nodes (the "Accused Instrumentalities").

9.     On information and belief, Intel Fabs 12, 22, 32, and 42 use 10 nm Intel process nodes (Intel 10 nm and/or Intel 7) for high volume production of semiconductor devices.

10.     Intel manufactures and sells semiconductors with microarchitectures, such as Palm Cove, Sunny Cove, Tremont, and Willow Cove. This includes, but is not limited to, products having codenames Cannon Lake, Ice Lake, Lakefield, Elkhart Lake, Jasper Lake, Parker Ridge, Snow Ridge, Tiger Lake, and DG1. For example, Intel has manufactured or is manufacturing the following semiconductor devices manufactured using the Intel 10 nm process:

- Intel Core i3-8121U Processor ("Intel 8121U");

- Intel Core i7-1065G7 Processor ("Intel 1065G7");

- Intel Core i5-L16G7 Processor ("Intel L16G7");

- Intel Pentium Processor J6426 ("Intel J6426");

- Intel Pentium Silver N6005 Processor ("Intel N6005");

- Intel Atom Processor C5125 ("Intel C5125");

- Intel Atom Processor P5731 ("Intel P5731");

- Intel Core i9-1195G7 Processor ("Intel 1195G7");

- Intel Iris Xe Graphics Dedicated GPU ("Intel Iris Xe"); and

- other substantially similar Intel semiconductors incorporating similar features or manufactured using similar processes.

11.     Intel manufactures and sells semiconductors with microarchitectures, such as Golden Cove and Gracemont. This includes, but is not limited to, products having codenames Alder Lake, Amston Lake, Sapphire Rapids, Raptor Lake, Emerald Rapids, and Falcon Mesa. For example, Intel has manufactured or is manufacturing the following semiconductor devices are manufactured using the Intel 7 process:

- Intel Core i9-12900K Processor ("Intel 12900K");

- Intel Atom x7809C Processor ("Intel x7809C");

- Intel Xeon Platinum 8444H Processor ("Intel 8444H");

- Intel Core i9-14900K Processor ("Intel 14900K");

- Intel Xeon Platinum 8570 Processor ("Intel 8570");

- Intel Agilex 7 M-Series FPGA ("Intel Agilex"); and

- other substantially similar Intel semiconductors incorporating similar features or manufactured using similar processes.

12.     Intel manufactures and sells semiconductors with microarchitectures using the Intel 22FFL or Intel 16 process, where such semiconductors include, but are not limited to, Intel Foveros products, Intel Lakefield products, Intel Meteor Lake products. For example, Intel has manufactured or is manufacturing the following semiconductor devices:

- Intel L16G7, manufactured using a 22FFL process node; and

- Intel Core Ultra 5 Processor 125U ("Intel 125U"), manufactured using a 22FFL process node; and

- other substantially similar Intel semiconductors incorporating similar features or manufactured using similar processes.

13.     Intel manufactures and sells semiconductors with microarchitectures, such as Redwood Cove and Crestmont, using the Intel 3 or Intel 4 process. This includes, but is not limited to, products having codenames Meteor Lake (Intel 4), Sierra Forest (Intel 3), and Granite Rapids (Intel 3). For example, Intel has manufactured or is manufacturing the following semiconductor devices:

- Intel 125U (Intel 4);

- Intel Xeon 6527P Processor ("Intel 6527P") (Intel 3);

- Intel Xeon 6740E Processor ("Intel 6740E") (Intel 3); and

- other substantially similar Intel semiconductors incorporating similar features or manufactured using similar processes.

14.    On information and belief, Intel and Intel Foundry Corporation also manufacture and sell to third-party foundry customers ("Intel Foundry Customers") Accused Instrumentalities with the above discussed microarchitectures, and other substantially similar Intel semiconductors incorporating similar features, using its Intel 3, Intel 4, Intel 7, Intel 10 nm, Intel 16, and Intel 22FFL processes–or similar processes. On information and belief, Intel Foundry Customers include Cisco and Amazon Web Services.

15.    On information and belief, Intel makes, uses, offers for sale, sells in the United States, and/or imports into the United States, Accused Instrumentalities that utilize the inventions of the Asserted Patents. Intel sells the manufactured Accused Instrumentalities to customers who then incorporate those components into other electronic products, such as servers, laptop computers, and/or desktop computers. Intel sells its Accused Instrumentalities to numerous companies in Texas and, in particular, this District. Intel sells its Accused Instrumentalities to businesses directly and to third-party distributors. Intel's customers include companies that incorporate the Accused Instrumentalities into other electronic products, including servers, desktop computers, and laptop computers that are then sold to end-users.

16.    In addition, Intel offers its manufacturing technology to external customers through its foundry business. On information and belief, to fabricate a chip on an Intel process, such as 22FFL, Intel 16, Intel 10 nm, Intel 7, Intel 4, or Intel 3, customers must design their layouts in compliance with Intel's process-design kit ("PDK") for that node. The PDK defines the specific design rules, physical constraints, and process assumptions necessary to produce working silicon using Intel's manufacturing flow. Customers use commercial electronic-design-automation ("EDA") tools, such as those provided by Cadence, Synopsys, and Siemens EDA, to apply the PDK rules during chip design, layout, and verification. These EDA tools work together with Intel's

PDKs to enforce mandatory layout features and alignment requirements that reflect the physical realities of Intel's manufacturing processes.

17.     Intel is subject to specific and general personal jurisdiction in this Court. This Court has personal jurisdiction over Intel because, on information and belief, Intel has sufficient minimum contacts and/or has engaged in continuous, systematic, and substantial activities within this State, including substantial marketing and sales of products and services within this State and District. Furthermore, on information and belief, this Court has personal jurisdiction over Intel because Intel has committed acts of infringement giving rise to MOSAID's claims for patent infringement within and directed to this District.

18.     Intel calls Texas home. For example, it operates a research and development campus in this District at 1300 South Mopac Expressway, Austin, Texas, 78746, which employs over 1,400 employees. Intel also has offices at 9442 Capital of Texas Hwy North, Building 2, Suite 600, Austin, Texas, 78759.

19.     These are physical, geographical locations in this District from which Intel carries out its business. On information and belief, employees at Intel's Austin campuses develop and/or use technologies related to the Accused Instrumentalities.

20.     "Intel has a substantial presence in this District . . . ." *See VLSI Tech., LLC v. Intel Corp.*, No. 6:19-CV-000254-ADA, 2019 WL 4254065, at *1 (W.D. Tex. Aug. 6, 2019) (Albright, J.). On information and belief, Intel has conducted, and does conduct, substantial business in this forum, directly and/or through subsidiaries, agents, representatives, or intermediaries, including but not limited to: (i) at least a portion of the acts of infringement alleged herein; (ii) purposefully and voluntarily placing Accused Instrumentalities into the stream of commerce with the expectation that they will be purchased by consumers in this forum; and/or (iii) regularly doing or

soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District. Thus, Intel is subject to this Court's specific and general personal jurisdiction pursuant to due process and the Texas Long-Arm Statute. To the extent Intel is not subject to jurisdiction in any state's courts of general jurisdiction, this Court has personal jurisdiction over Intel pursuant to Federal Rule of Civil Procedure 4(k)(2) because MOSAID's claims arise under federal law and exercising jurisdiction is consistent with the United States Constitution and laws.

21.    The exercise of personal jurisdiction over Intel would not offend traditional notions of fair play and substantial justice.

22.    Under 28 U.S.C. §§ 1391(b)–(d) and 1400(b), venue is proper in this judicial district at least because Intel has committed acts of infringement in this District giving rise to this action and because Intel has regular and established places of business within this District, including, but not limited to, the acts of infringement and places of business identified herein.

<u>**FACTUAL ALLEGATIONS**</u>

## I.    ASSERTED PATENTS

23.    United States Patent No. 7,476,957 is entitled "Semiconductor Integrated Circuit." The United States Patent and Trademark Office duly and legally issued the '957 Patent on January 13, 2009, from U.S. Patent Application No. 11/979,669, filed on November 7, 2007.

24.    The '957 Patent claims priority to Japanese Patent Application, No. 2006-339914 filed on Dec. 18, 2006.

25.    MOSAID is the current owner of all rights, title, and interest in and to the '957 Patent, including the right to sue for past damages.

26.    A true and correct copy of the '957 Patent is attached hereto as Exhibit A and is incorporated by reference herein.

27.    The '957 Patent generally relates to "a semiconductor integrated circuit capable of being simulated accurately and efficiently with the well proximity effect taken into consideration." For example, claim 1 of the '957 Patent is directed to:

A semiconductor integrated circuit comprising:

a first well region of a first conductivity type provided in a substrate;

a second well region of a second conductivity type provided in the substrate and coming into contact with the first well region at a well boundary extending in a gate length direction;

a first active region provided in the first well region and having first source and drain regions of the second conductivity type; and

a second active region provided in the first well region, having second source and drain regions of the second conductivity type, and differing in length in a gate width direction from the first active region,

wherein the distance from the well boundary to a halfway point of the length of the first active region in the gate width direction is substantially the same as the distance from the well boundary to a halfway point of the length of the second active region in the gate width direction.

28.    Intel is not licensed to the '957 Patent.

29.    United States Patent No. 7,514,757 is entitled "Memory Formation with Reduced Metallization Layers." The United States Patent and Trademark Office duly and legally issued the '757 Patent on April 7, 2009, from U.S. Patent Application No. 11,513,958, filed on August 31, 2006.

30.    MOSAID is the current owner of all rights, title, and interest in and to the '757 Patent, including the right to sue for past damages.

31.    A true and correct copy of the '757 Patent is attached hereto as Exhibit B and is incorporated by reference herein.

32.     The '757 Patent generally relates to "semiconductor devices, and more particularly to memories, and even more particularly to layout design and manufacturing methods of memories." For example, claim 1 of the '757 Patent is directed to:

> A semiconductor structure comprising:
>
> a static random access memory (SRAM) cell comprising a first pull-up MOS device, a first pull-down MOS device and a first pass-gate MOS device;
>
> a first metallization layer;
>
> an inter-layer dielectric (ILD) underlying the first metallization layer, wherein the ILD comprises an upper portion and a lower portion;
>
> a first first-layer contact in the lower portion of the ILD and connecting at least two of the first pull-up MOS device, the first pull-down MOS device and the first pass-gate MOS device, wherein the first first-layer contact is physically isolated from additional contacts in the upper portion of the ILD;
>
> a second first-layer contact in the lower portion of the ILD, wherein the semiconductor structure is free from materials of the ILD directly underlying, and contacting, the first first-layer contact; and
>
> a second-layer contact having at least a portion on the second first-layer contact, wherein the second-layer contact electrically connects the second first-layer contact to a bit-line or a power line.

33.     Intel is not licensed to the '757 Patent.

34.     United States Patent No. 9,349,655 is entitled "Method for Mechanical Stress Enhancement in Semiconductor Devices." The United States Patent and Trademark Office duly and legally issued the '655 Patent on May 24, 2016, from U.S. Patent Application No. 12/391,821, filed on February 24, 2009.

35.    The '655 Patent claims priority to two provisional U.S. Patent Applications, Provisional Application No. 61/093,155, filed Aug. 29, 2008, and Provisional Application No. 61/098,078, filed Sep. 18, 2008.

36.    MOSAID is the current owner of all rights, title, and interest in and to the '655 Patent, including the right to sue for past damages.

37.    A true and correct copy of the '655 Patent is attached hereto as Exhibit C and is incorporated by reference herein.

38.    The '655 Patent generally relates to an "integrated circuit includ[ing] a semiconductor substrate having an active region" with an "operation device in the active region" that "include[s] a strained channel; and at least one . . . dummy gate disposed at a side of the operational device and on the active region." Claim 1 of the '655 Patent is directed to:

>   An integrated circuit, comprising:
>
>   an active region in a semiconductor substrate;
>
>   at least one operational device on the active region, wherein the operational device includes a strained channel;
>
>   a first dummy gate disposed at a side of the operational device and directly on the active region;
>
>   a dummy active region in the semiconductor substrate and adjacent the active region;
>
>   a shallow trench isolation (STI) interposed between the active region and the dummy active region; and
>
>   a second dummy gate disposed on the dummy active region.

39.    Intel is not licensed to the '655 Patent.

40.    United States Patent No. 8,809,940 ("the '940 Patent") is entitled "Fin Held Effect Transistor." The United States Patent and Trademark Office duly and legally issued the '940 Patent on Aug. 19, 2014, from U.S. Patent Application No. 13/859,505, filed on Apr. 9, 2013.

41.     The '940 Patent is a divisional of U.S. Patent Application No. 12/903,712, filed Oct. 13, 2010, which issued as U.S. Patent No. 8,440,517.

42.     MOSAID is the current owner of all rights, title, and interest in and to the '940 Patent, including the right to sue for past damages.

43.     A true and correct copy of the '940 Patent is attached hereto as Exhibit D and is incorporated by reference herein.

44.     The '940 Patent generally relates to "integrated circuit fabrication," including "fin field effect transistors." For example, claim 1 of the '940 Patent is directed to:

> A fin field effect transistor comprising:
>
> a substrate comprising a top surface;
>
> a first insulation region and a second insulation region over the substrate top surface comprising tapered top surfaces;
>
> a fin of the substrate extending above the substrate top surface between the first and second insulation regions, wherein the fin comprises a recessed portion having a top surface lower than the tapered top surfaces of the first and second insulation regions, wherein the fin comprises a non-recessed portion having a top surface higher than the tapered top surfaces; and
>
> a gate stack over the non-recessed portion of the fin.

45.     Intel is not licensed to the '940 Patent.

46.     United States Patent No. 8,440,517 ("the '517 Patent") is entitled "FinFET and Method of Fabricating the Same." The United States Patent and Trademark Office duly and legally issued the '517 Patent on May 14, 2013, from U.S. Patent Application No. 12/903,712, filed on Oct. 13, 2010.

47.     MOSAID is the current owner of all rights, title, and interest in and to the '517 Patent, including the right to sue for past damages.

48.    A true and correct copy of the '517 Patent is attached hereto as Exhibit E and is incorporated by reference herein.

49.    The '517 Patent generally relates to "integrated circuit fabrication," including "fin field effect transistors." For example, claim 1 of the '517 Patent is directed to:

> A method of fabricating a fin field effect transistor (FinFET) comprising:
>
> providing a substrate having a first insulation region and a second insulation region having respective top surfaces, and a fin between the first and second insulation regions, wherein the top surfaces of the first and second insulation regions are below a top surface of the fin;
>
> forming a gate stack over a portion of the fin and over a portion of the first and second insulation regions;
>
> recessing a portion of the fin not covered by the gate stack to form a recessed portion of the fin below the top surfaces of the first and second insulation regions;
>
> etching corners of the top surfaces of the first and second insulation regions not covered by the gate stack to form tapered top surfaces of the first and second insulation regions; and
>
> selectively growing a strained material over the recessed portion of the fin and the tapered top surfaces of the first and second insulation regions.

50.    Intel is not licensed to the '517 Patent.

51.    United States Patent No. 9,209,300 ("the '300 Patent") is entitled "Fin Field Effect Transistor." The United States Patent and Trademark Office duly and legally issued the '300 Patent on Dec. 8, 2015, from U.S. Patent Application No. 14/337,494, filed on Jul. 22, 2014.

52.    The '300 Patent is a continuation of the '940 Patent, which is a divisional of the '517 Patent.

53.    MOSAID is the current owner of all rights, title, and interest in and to the '300 Patent, including the right to sue for past damages.

54. A true and correct copy of the '300 Patent is attached hereto as Exhibit F and is incorporated by reference herein.

55. The '300 Patent generally relates to "integrated circuit fabrication," including "fin field effect transistors." For example, claim 1 of the '300 Patent is directed to:

> A fin field effect transistor comprising:
>
> a first insulation region and a second insulation region over a top surface of a substrate, the first insulation region comprising tapered top surfaces, and the second insulation region comprising tapered top surfaces; and
>
> a fin extending above the top surface between the first insulation region and the second insulation region, wherein the fin comprises a first portion having a top surface below the tapered top surfaces of the first insulation region and the second insulation region, wherein the fin comprises a second portion having a top surface above the tapered top surfaces of the first insulation region and the second insulation region.

56. Intel is not licensed to the '300 Patent.

57. United States Patent No. 9,379,215 ("the '215 Patent") is entitled "Fin Field Effect Transistor." The United States Patent and Trademark Office duly and legally issued the '215 Patent on Jun. 28, 2016, from U.S. Patent Application No. 14/960,807, filed on Dec. 7, 2015.

58. The '215 Patent is a divisional of the '300 Patent, which is a continuation of the '940 Patent, which is a divisional of the '517 Patent.

59. MOSAID is the current owner of all rights, title, and interest in and to the '215 Patent, including the right to sue for past damages.

60. A true and correct copy of the '215 Patent is attached hereto as Exhibit G and is incorporated by reference herein.

61. The '215 Patent generally relates to "integrated circuit fabrication," including "fin field effect transistors." For example, claim 1 of the '215 Patent is directed to:

A method of fabricating a fin field effect transistor (FinFET), the method comprising:

forming a first insulation region and a second insulation region having respective top surfaces;

forming a fin between the first and second insulation regions, wherein the top surfaces of the first and second insulation regions are below a top surface of the fin;

forming a gate stack over a portion of the fin and over a portion of the first and second insulation regions; and

tapering the top surfaces of the first and second insulation regions not covered by the gate stack.

62. Intel is not licensed to the '215 Patent.

63. United States Patent No. 9,716,091 ("the '091 Patent") is entitled "Fin Field Effect Transistor." The United States Patent and Trademark Office duly and legally issued the '091 Patent on Jul. 25, 2017, from U.S. Patent Application No. 15/194,222, filed on Jun. 27, 2016.

64. The '091 Patent is a continuation of the '215 Patent, which is a divisional of the '300 Patent, which is a continuation of the '940 Patent, which is a divisional of the '517 Patent.

65. MOSAID is the current owner of all rights, title, and interest in and to the '091 Patent, including the right to sue for past damages.

66. A true and correct copy of the '091 Patent is attached hereto as Exhibit H and is incorporated by reference herein.

67. The '091 Patent generally relates to "integrated circuit fabrication," including "fin field effect transistors." For example, claim 11 of the '091 Patent is directed to:

A fin field effect transistor comprising:

a first fin extending from a top surface of a substrate and a second fin extending from the top surface of the substrate;

an insulation region interposing the first and second fins, wherein the insulation region includes a tapered top surface, wherein

a first portion of each of the first fin and the second fin extends above the tapered top surface;

a gate stack over the first portion of the first fin and the second fin;

a semiconductor material adjacent the gate stack and over the first fin, the second fin, and the insulation region including the tapered top surface, wherein the semiconductor material forms a source or drain associated with the gate stack.

68.    Intel is not licensed to the '091 Patent.

69.    United States Patent No. 7,842,577 ("the '577 Patent") is entitled "Semiconductor Device and Method for Manufacturing the Same." The United States Patent and Trademark Office duly and legally issued the '577 Patent on Nov. 30, 2010, from U.S. Patent Application No. 12/127,646, filed on May 27, 2006.

70.    MOSAID is the current owner of all rights, title, and interest in and to the '577 Patent, including the right to sue for past damages.

71.    A true and correct copy of the '577 Patent is attached hereto as Exhibit I and is incorporated by reference herein.

72.    The '577 Patent generally relates to "a method of forming an integrated circuit structure," including "providing a semiconductor substrate" and "forming a first isolation region in the semiconductor substrate." "[A]fter the step of forming the first isolation region," "a metal-oxide-semiconductor (MOS) device" is formed "at a surface of the semiconductor substrate," and the "forming of the MOS device includes forming a source/drain region; and after the step of forming the MOS device, forming a second isolation region in the semiconductor substrate." For example, claim 1 of the '577 Patent is directed to:

A method of forming an integrated circuit structure, the method comprising:

providing a semiconductor substrate;

forming a first isolation region in the semiconductor substrate;

after the step of forming the first isolation region, forming a metal-oxide-semiconductor (MOS) device at a surface of the semiconductor substrate, wherein the step of forming the MOS device comprises forming a source/drain region; and

after the step of forming the MOS device, forming a second isolation region in the semiconductor substrate comprising:

after the step of forming the source/drain region, etching a portion of the source/drain region away from a gate spacer of the MOS device to form a trench; and

forming an inter-layer dielectric (ILD), wherein the ILD extends into the trench to form the second isolation region.

73.     Intel is not licensed to the '577 Patent.

74.     United States Patent No. 8,338,909 ("the '909 Patent") is entitled "Two-Step STI Formation Process." The United States Patent and Trademark Office duly and legally issued the '909 Patent on Dec. 25, 2012, from U.S. Patent Application No. 12/910,638, filed on Oct. 22, 2010.

75.     The '909 Patent is a continuation of the '577 Patent.

76.     MOSAID is the current owner of all rights, title, and interest in and to the '909 Patent, including the right to sue for past damages.

77.     A true and correct copy of the '909 Patent is attached hereto as Exhibit J and is incorporated by reference herein.

78.     The '909 Patent generally relates to "integrated circuits" and "the formation of isolation structures for separating integrated circuits. For example, claim 1 of the '909 Patent is directed to:

An integrated circuit structure comprising:

a semiconductor substrate comprising an active region;

a first shallow trench isolation (STI) region contacting a first side edge of the active region;

a gate electrode over the active region and the first STI region; and

a source/drain region adjacent the gate electrode, with a portion of the active region forming the source/drain region:

a trench in the semiconductor substrate and contacting a second side edge of the active region;

an inter-layer dielectric (ILD) extending from over the gate electrode to inside the trench, wherein a portion of the ILD in the trench forms a second STI region; and

a contact etch stop layer (CESL) underlying the ILD, wherein the CESL does not extend into the trench.

79.    Intel is not licensed to the '909 Patent.

80.    United States Patent No. 9,564,433 ("the '433 Patent") is entitled "Semiconductor Device with Improved Contact Structure and Method of Forming the Same." The United States Patent and Trademark Office duly and legally issued the '433 Patent on Feb. 7, 2017, from U.S. Patent Application No. 14/617,467, filed on Feb. 9, 2015.

81.    The '433 Patent is continuation of U.S. Patent Application No. 11/755,039, filed Jul. 9, 2007, which issued as U.S. Patent No. 8,952,547.

82.    MOSAID is the current owner of all rights, title, and interest in and to the '433 Patent, including the right to sue for past damages.

83.    A true and correct copy of the '433 Patent is attached hereto as Exhibit K and is incorporated by reference herein.

84.    The '433 Patent generally relates to a contact in a MOS transistor and a method for forming the same. For example, claim 8 of the '433 Patent is directed to:

A method comprising:

forming a first gate stack over a semiconductor substrate, wherein the first gate stack includes a gate dielectric layer, wherein a sidewall spacer is disposed along the first gate stack and physically contacts the gate dielectric layer;

forming a first source/drain feature in the semiconductor substrate, wherein the first source/drain feature is associated with the first gate stack;

forming a first contact over the first source/drain feature, wherein a length of the first contact is larger than a width of the first contact, and wherein the length is in a direction parallel to a channel width direction of the first gate stack and the width is in a direction perpendicular to the channel width direction of the first gate stack; and

forming a second contact over the first contact and the first gate stack, wherein the second contact has a bottom surface physically contacting the first contact that extends continuously to physically contact the first gate stack, wherein the bottom surface of the second contact faces the semiconductor substrate and physically contacts the sidewall spacer, wherein a length of the second contact is in the direction parallel to the channel width direction of the first gate stack and wherein the length of the first contact is larger than the length of the second contact.

85.    Intel is not licensed to the '433 Patent.

## II.    INTEL'S INFRINGING ACTIVITIES

86.    Intel manufactures, uses, offers for sale and/or sells in the United States, and/or imports into the United States, semiconductor products, including at least the Accused Instrumentalities, for use in a variety of devices, including servers, desktop computers, laptop computers, and other devices. The Accused Instrumentalities, and products incorporating the Accused Instrumentalities, have been, and continue to be, widely available for sale in the United States and Texas.

87.    For example, on information and belief, Intel manufactures or imports the Accused Instrumentalities and sells them to other companies, such as Dell Technologies, Inc., who

incorporate them into electronic devices, such as servers, desktop computers, and laptop computers. Intel also sells the Accused Instrumentalities through its Authorized Distributors to reach consumers, businesses, and resellers.

88.     On information and belief, Intel's direct and indirect customers purchase the Accused Instrumentalities and incorporate them into electronic systems, such as servers, desktop computers, and laptop computers, and then import the assembled devices into the United States.

89.     On information and belief, consumers, businesses, and resellers who purchase the Accused Instrumentalities also use them in the United States.

90.     On information and belief, Intel has advertised and continues to advertise the Accused Instrumentalities on its website. For example, Intel advertises the Intel Core Alder Lake Processors and Intel Core Ice Lake Processors, Intel Core Ultra Meteor Lake Processors, and Intel Xeon Sierra Forest Processors including on its website. These advertisements promote the Accused Instrumentalities and encourage others to purchase and use the Accused Instrumentalities.

91.     On information and belief, Intel also provides extensive technical support and resources needed to implement its processor products, including via its website. For example, Intel provides process-design kits, low level drivers, software drivers, reference applications and middleware for the Accused Instrumentalities on its website. Intel also provides and/or links to manuals and sample application code for optimizing the use of Alder Lake and Ice Lake processors on its website, maintains help boards, posts blogs, and provides direct customer support. On information and belief, Intel also provides updates for electronic devices that incorporate the Accused Instrumentalities via third parties, such as through operating system updates.

92.     On information and belief, these resources encourage consumers and businesses to purchase the Accused Instrumentalities because the continued support ensure that the Accused Instrumentalities will function as technology advances.

93.     Intel partners with a variety of businesses that act as Authorized Distributors. Intel advertises these Authorized Distributors to encourage others to purchase the Accused Instrumentalities and electronic devices that incorporate the Accused Instrumentalities from the distributors. Intel also incentivizes businesses to become Authorized Distributors through its programs.

94.     On information and belief, Intel partners with Authorized Distributors in this District. For example, Dell Technologies, Inc., which is headquartered in this District, is Intel's largest customer and accounts for close to 20% of Intel's net revenue. Dell is one of Intel's "Titanium Partners," which is the highest membership tier in Intel's Partner Alliance. Intel maintains a link to Dell's website and contact information, including the Austin-area address of 401 Dell Way, Round Rock, Texas, 78664.

95.     On information and belief, Dell has used or uses the Accused Instrumentalities, such as the Intel 12900K processor, in its desktop computers and continues to use Intel processors that, on information and belief, are substantially similar to the Intel 12900K. Dell also sells other electronic devices, including servers, desktop computers, and laptop computers that incorporate the Accused Instrumentalities.

96.     In addition to selling its own processors, Intel manufactures semiconductor devices for external customers through its foundry operations. On information and belief, to fabricate a chip using an Intel process, including 22FFL, Intel 16, Intel 10 nm, Intel 7, Intel 4, and Intel 3, a customer must comply with Intel's process-specific design rules, which govern the physical layout

of features on the chip, including arrangement of dummy-gate structures and alignment with respect to well boundaries. These rules are enforced through Intel's PDKs and verified using commercial EDA tools.

97.     On information and belief, the same manufacturing methods, PDK rules, layout practices, and physical-verification flows that Intel applies to external customer products are used in the manufacture of Intel's own processors, including the Accused Instrumentalities. The same process constraints that govern customer devices also apply to Intel's internally developed processors fabricated on the same 22FFL, Intel 16, Intel 10 nm, Intel 7, Intel 4, and Intel 3 nodes.

98.     As a result, Intel's foundry practices and process-design requirements are directly implicated in the manufacture, use, sale, and importation of the Accused Instrumentalities.

99.     On information and belief, Intel's collaboration with EDA vendors such as Cadence, Synopsys, and Siemens EDA ensure that Intel's process-design rules are embedded into the design flows used both for its foundry customers and for its own internal processor products. These EDA-certified rule decks and verification flows cause the infringing technology to be implemented automatically during chip design and enforced during manufacturing.

## COUNT I: INFRINGEMENT OF THE '957 PATENT

100.     MOSAID incorporates by reference and realleges each of the preceding paragraphs as if specifically set forth herein.

101.     For purposes of MOSAID's infringement allegations for the '957 Patent, the "Accused Instrumentalities" include, but are not limited to instrumentalities made using an Intel 7 fabrication process and other instrumentalities that Intel has made using the same or similar Intel fabrication processes, including, but not limited to, instrumentalities made for Intel Foundry Customers.

102.    In violation of 35 U.S.C. § 271(a), Intel is and has been directly infringing one or more of the claims of the '957 Patent, including at least claim 1, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authority, at least the Accused Instrumentalities. For example, Intel sells to businesses and distributors, including Authorized Distributors, who use, sell, or import the Accused Instrumentalities or electronic devices incorporating the Accused Instrumentalities into the United States. Intel also makes the Accused Instrumentalities in, or imports the Accused Instrumentalities into, the United States.

103.    Intel infringes one or more claims of the '957 Patent, including at least claim 1, literally and/or under the doctrine of equivalents. *See* Exhibit L.

104.    At least as of the filing of this Complaint, in violation of 35 U.S.C. § 271(b), Intel is infringing the '957 Patent indirectly by inducing third parties, including for example Intel's customers and/or end-users of the Accused Instrumentalities, to infringe in the United States and this District, one or more claims of the '957 Patent, including at least claim 1. Direct infringement by, for example, Intel's customers and/or end-users of the Accused Instrumentalities occurs by at least the use of the Accused Instrumentalities.

105.    On information and belief, Intel supplies processor products, that are especially made or especially adapted to practice the inventions claimed in the '957 Patent, including at least claim 1 of the '957 Patent, to induce third parties, including for example Intel's customers and/or end-users of the Accused Instrumentalities, to use the Accused Instrumentalities in a manner that would infringe one or more claims of the '957 Patent, including at least claim 1 of the '957 Patent.

106.    On information and belief, Intel furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Instrumentalities, including

Intel's models (e.g., Verilog models), reference designs, or drivers (e.g., low level drivers, software drivers, and middleware), and markets and advertises the Accused Instrumentalities on its website and through its Authorized Distributors, to induce third parties, including Intel's customers and/or end-users of the Accused Instrumentalities, to use the Accused Instrumentalities in a manner that would infringe one or more claims of the '957 Patent, including at least claim 1 of the '957 Patent. This includes purchasing and/or importing the Accused Instrumentalities in the United States, incorporating the Accused Instrumentalities into electronic devices and selling or importing those electronic devices into the United States, distributing the Accused Instrumentalities as an Authorized Distributor of Intel, and using the Accused Instrumentalities or electronic devices incorporating the Accused Instrumentalities in the United States.

107.    As to Intel Foundry Customers, Intel actively encourages its Intel Foundry Customers to use Intel's infringing fabrication processes to make Accused Instrumentalities that infringe the '957 Patent; Intel further instructs, directs, and requires the performance of such fabrication processes through the implementation of designs and rules. In addition to marketing and advertising materials, Intel provides its Intel Foundry Customers with technical and engineering support through EDA tools and process design kits to facilitate Intel Foundry Customers' use of Intel's fabrication processes.

108.    Intel also had actual knowledge of the '957 Patent, and its infringement thereof, no later than the date of filing of this Complaint.

109.    Therefore, Intel has induced infringement by others of one or more of the claims of the '957 Patent, including at least claim 1, with the specific intent to induce acts that constitute infringement of the '957 Patent and with knowledge that such acts infringed one or more claims of the '957 Patent, including at least claim 1 of the '957 Patent.

110.    At least as of the filing of this Complaint, in violation of 35 U.S.C. § 271(c), Intel is infringing the '957 Patent indirectly by contributing to the infringement by third parties of one or more claims of the '957 Patent, including at least claim 1, in the United States and this District. For example, Intel customers, including Intel Foundry Customers, directly infringe by at least the use, sale, offer to sell and importation into the United States of products that incorporate the Accused Instrumentalities.

111.    The Accused Instrumentalities have no substantial non-infringing uses and are a material part of not only Intel's processor products, but also are a material part of downstream products that incorporate such processors or chiplets.

112.    Intel's infringement of one or more claims of the '957 Patent, including at least claim 1 of the '957 Patent, is, and continues to be, willful.

113.    Despite this knowledge, Intel continues to infringe, both directly and indirectly, one or more claims of the '957 Patent, including at least claim 1 of the '957 Patent, in disregard of MOSAID's patent rights. Accordingly, Intel deliberately and intentionally infringes the '957 Patent, and continues to do so, after receiving express and actual knowledge of both the '957 Patent and its infringement thereof.

114.    Therefore, Intel's infringement of the '957 Patent is and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling MOSAID to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT II: INFRINGEMENT OF THE '757 PATENT

115.    MOSAID incorporates by reference and realleges each of the preceding paragraphs as if specifically set forth herein.

116.    For purposes of MOSAID's infringement allegations for the '757 Patent, the "Accused Instrumentalities" include, but are not limited to instrumentalities made using the 22FFL or Intel 16 fabrication process and other instrumentalities that Intel has made using the same or similar Intel fabrication processes, including, but not limited to, instrumentalities made for Intel Foundry Customers.

117.    In violation of 35 U.S.C. § 271(a), Intel is and has been directly infringing one or more of the claims of the '757 Patent, including at least claim 1, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authority, at least the Accused Instrumentalities. For example, Intel sells to businesses and distributors, including Authorized Distributors, who use, sell, or import the Accused Instrumentalities or electronic devices incorporating the Accused Instrumentalities into the United States. Intel also makes the Accused Instrumentalities in, or imports the Accused Instrumentalities into, the United States.

118.    Intel infringes one or more claims of the '757 Patent, including at least claim 1, literally and/or under the doctrine of equivalents. *See* Exhibit M.

119.    At least as of the filing of this Complaint, in violation of 35 U.S.C. § 271(b), Intel is infringing the '757 Patent indirectly by inducing third parties, including for example Intel's customers and/or end-users of the Accused Instrumentalities, to infringe in the United States and this District, one or more claims of the '757 Patent, including at least claim 1. Direct infringement by, for example, Intel's customers and/or end-users of the Accused Instrumentalities occurs by at least the use of the Accused Instrumentalities.

120.    On information and belief, Intel supplies processor products, that are especially made or especially adapted to practice the inventions claimed in the '757 Patent, including at least

claim 1 of the '757 Patent, to induce third parties, including for example Intel's customers and/or end-users of the Accused Instrumentalities, to use the Accused Instrumentalities in a manner that would infringe one or more claims of the '757 Patent, including at least claim 1 of the '757 Patent.

121.    On information and belief, Intel furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Instrumentalities, including Intel's models (e.g., Verilog models), reference designs, or drivers (e.g., low level drivers, software drivers, and middleware), and markets and advertises the Accused Instrumentalities on its website and through its Authorized Distributors, to induce third parties, including Intel's customers and/or end-users of the Accused Instrumentalities, to use the Accused Instrumentalities in a manner that would infringe one or more claims of the '757 Patent, including at least claim 1 of the '757 Patent. This includes purchasing and/or importing the Accused Instrumentalities in the United States, incorporating the Accused Instrumentalities into electronic devices and selling or importing those electronic devices into the United States, distributing the Accused Instrumentalities as an Authorized Distributor of Intel, and using the Accused Instrumentalities or electronic devices incorporating the Accused Instrumentalities in the United States.

122.    As to Intel Foundry Customers, Intel actively encourages its Intel Foundry Customers to use Intel's infringing fabrication processes to make Accused Instrumentalities that infringe the '757 Patent; Intel further instructs, directs, and requires the performance of such fabrication processes through the implementation of designs and rules. In addition to marketing and advertising materials, Intel provides its Intel Foundry Customers with technical and engineering support through EDA tools and process design kits to facilitate Intel Foundry Customers' use of Intel's fabrication processes.

123.    Intel also had actual knowledge of the '757 Patent, and its infringement thereof, no later than the date of filing of this Complaint.

124.    Therefore, Intel has induced infringement by others of one or more of the claims of the '757 Patent, including at least claim 1, with the specific intent to induce acts that constitute infringement of the '757 Patent and with knowledge that such acts infringed one or more claims of the '757 Patent, including at least claim 1 of the '757 Patent.

125.    At least as of the filing of this Complaint, in violation of 35 U.S.C. § 271(c), Intel is infringing the '757 Patent indirectly by contributing to the infringement by third parties of one or more claims of the '757 Patent, including at least claim 1, in the United States and this District. For example, Intel customers, including Intel Foundry Customers, directly infringe by at least the use, sale, offer to sell and importation into the United States of products that incorporate the Accused Instrumentalities.

126.    The Accused Instrumentalities have no substantial non-infringing uses and are a material part of not only Intel's processor products, but also are a material part of downstream products that incorporate such processors or chiplets.

127.    Intel's infringement of one or more claims of the '757 Patent, including at least claim 1 of the '757 Patent, is, and continues to be, willful.

128.    Despite this knowledge, Intel continues to infringe, both directly and indirectly, one or more claims of the '757 Patent, including at least claim 1 of the '757 Patent, in disregard of MOSAID's patent rights. Accordingly, Intel deliberately and intentionally infringes the '757 Patent, and continues to do so, after receiving express and actual knowledge of both the '757 Patent and its infringement thereof.

129.    Therefore, Intel's infringement of the '757 Patent is and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling MOSAID to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT III: INFRINGEMENT OF THE '655 PATENT

130.    MOSAID incorporates by reference and realleges each of the preceding paragraphs as if specifically set forth herein.

131.    For purposes of MOSAID's infringement allegations for the '655 Patent, the "Accused Instrumentalities" include, but are not limited to instrumentalities made using an Intel 10 nm or Intel 7 fabrication process and other instrumentalities that Intel has made using the same or similar Intel fabrication processes, including, but not limited to, instrumentalities made for Intel Foundry Customers.

132.    In violation of 35 U.S.C. § 271(a), Intel is and has been directly infringing one or more of the claims of the '655 Patent, including at least claim 1, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authority, at least the Accused Instrumentalities. For example, Intel sells to businesses and distributors, including Authorized Distributors, who use, sell, or import the Accused Instrumentalities or electronic devices incorporating the Accused Instrumentalities into the United States. Intel also makes the Accused Instrumentalities in, or imports the Accused Instrumentalities into, the United States.

133.    Intel is infringing one or more claims of the '655 Patent, including at least claim 1, literally and/or under the doctrine of equivalents. *See* Exhibit N.

134.    At least as of the filing of this Complaint, in violation of 35 U.S.C. § 271(b), Intel is infringing the '655 Patent indirectly by inducing third parties, including for example Intel's

customers and/or end-users of the Accused Instrumentalities, to infringe in the United States and this District, one or more claims of the '655 Patent, including at least claim 1. Direct infringement by, for example, Intel's customers and/or end-users of the Accused Instrumentalities occurs by at least the use of the Accused Instrumentalities.

135.    On information and belief, Intel supplies processor products that are especially made or especially adapted to practice the inventions claimed in the '655 Patent, including at least claim 1 of the '655 Patent, to induce third parties, including for example Intel's customers and/or end-users of the Accused Instrumentalities, to use the Accused Instrumentalities in a manner that would infringe one or more claims of the '655 Patent, including at least claim 1 of the '655 Patent.

136.    On  information and belief, Intel furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Instrumentalities, including Intel's models (e.g., Verilog models), reference designs, or drivers (e.g., low level drivers, software drivers, and middleware), and markets and advertises the Accused Instrumentalities on its website and through its Authorized Distributors, to induce third parties, including Intel's customers and/or end-users of the Accused Instrumentalities, to use the Accused Instrumentalities in a manner that would infringe one or more claims of the '655 Patent, including at least claim 1 of the '655 Patent. This includes purchasing and/or importing the Accused Instrumentalities in the United States, incorporating the Accused Instrumentalities into electronic devices and selling or importing those electronic devices into the United States, distributing the Accused Instrumentalities as an Authorized Distributor of Intel, and using the Accused Instrumentalities or electronic devices incorporating the Accused Instrumentalities in the United States.

137.    Intel continues to induce third parties, including Intel's customers and/or end-users of the Accused Instrumentalities, to infringe one or more claims of the '655 Patent, including at

least claim 1 of the '655 Patent with the specific intent to cause infringement. Intel knew or should have known that those acts would induce actual infringement by third parties, including Intel's customers and/or end-users of the Accused Instrumentalities, of one or more of the claims of the '655 Patent, including at least claim 1.

138.    As to Intel Foundry Customers, Intel actively encourages its Intel Foundry Customers to use Intel's infringing fabrication processes to make Accused Instrumentalities that infringe the '655 Patent; Intel further instructs, directs, and requires the performance of such fabrication processes through the implementation of designs and rules. In addition to marketing and advertising materials, Intel provides its Intel Foundry Customers with technical and engineering support through EDA tools and process design kits to facilitate Intel Foundry Customers' use of Intel's fabrication processes.

139.    Intel also had actual knowledge of the '655 Patent, and its infringement thereof, no later than the date of filing of this Complaint.

140.    Therefore, Intel has induced infringement by others of one or more of the claims of the '655 Patent, including at least claim 1, with the specific intent to induce acts that constitute infringement of the '655 Patent and with knowledge that such acts infringed one or more claims of the '655 Patent, including at least claim 1 of the '655 Patent.

141.    At least as of the filing of this Complaint, in violation of 35 U.S.C. § 271(c), Intel is infringing the '655 Patent indirectly by contributing to the infringement by third parties of one or more claims of the '655 Patent, including at least claim 1, in the United States and this District. For example, Intel customers, including Intel Foundry Customers, directly infringe by at least the use, sale, offer to sell and importation into the United States of products that incorporate the Accused Instrumentalities.

142.    The Accused Instrumentalities have no substantial non-infringing uses and are a material part of not only Intel's processor products, but also are a material part of downstream products that incorporate such processors or chiplets.

143.    Intel's infringement of one or more claims of the '655 Patent, including at least claim 1 of the '655 Patent, has been, and continues to be, willful.

144.    Intel continues to infringe one or more claims of the '655 Patent including at least claim 1 of the '655 Patent, in disregard of MOSAID's patent rights. As a result, Intel deliberately and intentionally infringed the '655 Patent, and continues to do so, after receiving express and actual knowledge of both the '655 Patent and its infringement thereof.

145.    Therefore, Intel's infringement of the '655 Patent has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling MOSAID to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT IV: INFRINGEMENT OF THE '940 PATENT

146.    MOSAID incorporates by reference and realleges each of the preceding paragraphs as if specifically set forth herein.

147.    For purposes of MOSAID's infringement allegations for the '940 Patent, the "Accused Instrumentalities" include, but are not limited to instrumentalities made using a 22FFL, Intel 16, Intel 3, or Intel 4 fabrication process and other instrumentalities that Intel has made using the same or similar Intel fabrication processes, including, but not limited to, instrumentalities made for Intel Foundry Customers.

148.    In violation of 35 U.S.C. § 271(a), Intel is and has been directly infringing one or more of the claims of the '940 Patent, including at least claim 1, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authority, at

least the Accused Instrumentalities. For example, Intel makes the Accused Instrumentalities in, or imports the Accused Instrumentalities into, the United States. Intel also sells to businesses and distributors, including Authorized Distributors, who use, sell, or import the Accused Instrumentalities or electronic devices incorporating one or more of the Accused Instrumentalities into the United States.

149.    The Accused Instrumentalities infringe one or more claims of the '940 Patent, including at least claim 1, literally and/or under the doctrine of equivalents. *See* Exhibit O.

150.    In violation of 35 U.S.C. § 271(b), Intel is and has been infringing one or more of the claims of '940 Patent, including at least claim 1, indirectly by inducing the infringement of one or more claims of '940 Patent, including at least claim 1, by third parties, including for example Intel's customers and/or end-users, in this District and elsewhere in the United States. Direct infringement by, for example, Intel's customers and/or end-users occurs by at least the use of at least one Accused Instrumentalities.

151.    On information and belief, Intel supplies the Accused Instrumentalities, that are especially made or especially adapted to practice the inventions claimed in the '940 Patent, including at least claim 1 of the '940 Patent, to induce third parties, including for example Intel's customers and/or end-users, to use the Accused Instrumentalities in a manner that would infringe one or more claims of the '940 Patent, including at least claim 1 of the '940 Patent.

152.    On information and belief, Intel furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Instrumentalities, including Intel's models (e.g., Verilog models), reference designs, or drivers (e.g., low level drivers, software drivers, and middleware), and markets and advertises the Accused Instrumentalities on its website and through its Authorized Distributors, to induce third parties, including Intel's customers and/or

end-users, to use the Accused Instrumentalities in a manner that would infringe one or more claims of the '940 Patent, including at least claim 1 of the '940 Patent. This includes purchasing and/or importing the Accused Instrumentalities in the United States, incorporating the Accused Instrumentalities into electronic devices and selling or importing those electronic devices into the United States, distributing the Accused Instrumentalities as an Authorized Distributor of Intel, and using the Accused Instrumentalities or electronic devices incorporating the Accused Instrumentalities in the United States.

153.    As to Intel Foundry Customers, Intel actively encourages its Intel Foundry Customers to use Intel's infringing fabrication processes to make Accused Instrumentalities; Intel further instructs, directs, and requires the performance of such fabrication processes through the implementation of designs and rules. In addition to marketing and advertising materials, Intel provides its Intel Foundry Customers with technical and engineering support through Electronic Design Automation ("EDA") tools and PDKs to facilitate Intel Foundry Customers' use of Intel's fabrication processes.

154.    Intel also had actual knowledge of the '940 Patent, and its infringement thereof, no later than the date of filing of this Complaint.

155.    Therefore, Intel has induced infringement by others of one or more of the claims of the '940 Patent, including at least claim 1, with the specific intent to induce acts that constitute infringement of the '940 Patent and with knowledge that such acts infringed one or more claims of the '940 Patent, including at least claim 1 of the '940 Patent.

156.    At least as of the filing of this Complaint, in violation of 35 U.S.C. § 271(c), Intel is infringing the '940 Patent indirectly by contributing to the infringement by third parties of one or more claims of the '940 Patent, including at least claim 1, in the United States and this District.

For example, Intel customers, including Intel Foundry Customers, directly infringe by at least the use, sale, offer to sell and importation into the United States of products that incorporate the Accused Instrumentalities.

157.    The Accused Instrumentalities have no substantial non-infringing uses and are a material part of not only Intel's processor products, but also are a material part of downstream products that incorporate such processors or chiplets.

158.    Intel's infringement of one or more claims of the '940 Patent, including at least claim 1 of the '940 Patent, is, and continues to be, willful.

159.    Despite this knowledge, Intel continues to infringe, both directly and indirectly, one or more claims of the '940 Patent, including at least claim 1 of the '940 Patent, in disregard of MOSAID's patent rights. Accordingly, Intel deliberately and intentionally infringes the '940 Patent, and continues to do so, after receiving express and actual knowledge of both the '940 Patent and its infringement thereof.

160.    Therefore, Intel's infringement of the '940 Patent is and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling MOSAID to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT V: INFRINGEMENT OF THE '517 PATENT

161.    MOSAID incorporates by reference and realleges each of the preceding paragraphs as if specifically set forth herein.

162.    For purposes of MOSAID's infringement allegations for the '517 Patent, the "Accused Instrumentalities" include, but are not limited to instrumentalities made using a 22FFL, Intel 16, Intel 3, or Intel 4 fabrication process, and other instrumentalities that Intel has made using

the same or similar Intel fabrication processes, including, but not limited to, instrumentalities made for Intel Foundry Customers.

163.    In violation of 35 U.S.C. § 271(a), Intel is and has been directly infringing one or more of the claims of the '517 Patent, including at least claim 1, by making at least the Accused Instrumentalities using the claimed methods of the '517 Patent and further using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authority, at least the Accused Instrumentalities that were made by the claimed methods of the '517 Patent.

164.    Intel is infringing one or more claims of the '517 Patent, including at least claim 1, literally and/or under the doctrine of equivalents. *See* Exhibit P.

165.    In violation of 35 U.S.C. § 271(g), Intel is and has been, without authority, importing into the United States and/or offering to sell, selling, or using within the United States Accused Instrumentalities that are manufactured using the claimed processes of one or more of the claims of the '517 Patent, including at least claim 1. For example, Intel manufactures at least one or more of the Accused Instrumentalities at Intel's Fab 24 and Fab 34 located in Leixlip, Ireland and other foreign Intel foundries. On information and belief, at least some of such Accused Instrumentalities are imported into the United States.

166.    In violation of 35 U.S.C. §§ 271(b) and 271(c), Intel is and has been indirectly infringing one or more of the claims of the '517 Patent, including at least claim 1, by inducing and contributing to the direct infringement of third parties, such as, for example, Intel Foundry Customers, Intel subsidiaries, and/or other entities related to Intel that are involved in the operation and management of Intel's fabs ("Intel Fabrication Partners"). Intel actively encourages such third parties to use Intel's infringing fabrication processes to make Accused Instrumentalities; Intel further instructs, directs, and requires the performance of such fabrication processes through the

implementation of designs and rules. In addition to marketing and advertising materials, Intel provides such third parties with technical and engineering support through EDA tools and PDKs to facilitate the use of Intel's fabrication processes. These third parties directly infringe by practicing the fabrication processes to make Accused Instrumentalities. Intel Foundry Customers and Intel Fabrication Partners further directly infringe by at least the use, sale, offer to sell and importation into the United States of Accused Instrumentalities and/or products that incorporate Accused Instrumentalities.

167.    Intel has actual knowledge of the '517 Patent, and its infringement thereof, no later than the date of filing of this Complaint.

168.    Intel specifically intends that its Intel Foundry Customers and Intel Fabrication Partners use Intel's infringing fabrication process to produce Accused Instrumentalities and knew that Intel Foundry Customers' use, sale, offer to sell, and importation into the United States of Accused Instrumentalities and/or products that incorporate the Accused Instrumentalities would constitute direct infringement.

169.    Intel's fabrication process technology, and the Accused Instrumentalities, have no substantial non-infringing uses and are a material part of not only Intel's fabrication processes and processor products, but also are a material part of downstream products that incorporate such processors.

170.    Intel's infringement of one or more claims of the '517 Patent, including at least claim 1 of the '517 Patent, has been, and continues to be, willful.

171.    Intel continues to infringe one or more claims of the '517 Patent including at least claim 1 of the '517 Patent, in disregard of MOSAID's patent rights. As a result, Intel deliberately

and intentionally infringed the '517 Patent, and continues to do so, after receiving express and actual knowledge of both the '517 Patent and its infringement thereof.

172.    Therefore, Intel's infringement of the '517 Patent has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling MOSAID to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT VI: INFRINGEMENT OF THE '300 PATENT

173.    MOSAID incorporates by reference and realleges each of the preceding paragraphs as if specifically set forth herein.

174.    For purposes of MOSAID's infringement allegations for the '300 Patent, the "Accused Instrumentalities" include, but are not limited to instrumentalities made using an 22FFL, Intel 16, Intel 3, or Intel 4 fabrication process and other instrumentalities that Intel has made using the same or similar Intel fabrication processes, including, but not limited to, instrumentalities made for Intel Foundry Customers.

175.    In violation of 35 U.S.C. § 271(a), Intel is and has been directly infringing one or more of the claims of the '300 Patent, including at least claim 1, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authority, at least the Accused Instrumentalities. For example, Intel sells to businesses and distributors, including Authorized Distributors, who use, sell, or import the Accused Instrumentalities or electronic devices incorporating the Accused Instrumentalities into the United States. Intel also makes the Accused Instrumentalities in, or imports the Accused Instrumentalities into, the United States.

176.    Intel infringes one or more claims of the '300 Patent, including at least claim 1, literally and/or under the doctrine of equivalents. *See* Exhibit Q.

177.    In violation of 35 U.S.C. § 271(b), Intel is and has been infringing one or more of the claims of '300 Patent, including at least claim 1, indirectly by inducing the infringement of one or more claims of '300 Patent, including at least claim 1, by third parties, including for example Intel's customers and/or end-users of the Accused Instrumentalities, in this District and elsewhere in the United States. Direct infringement by, for example, Intel's customers and/or end-users of the Accused Instrumentalities occurs by at least the use of the Accused Instrumentalities.

178.    On information and belief, Intel supplies processor products, that are especially made or especially adapted to practice the inventions claimed in the '300 Patent, including at least claim 1 of the '300 Patent, to induce third parties, including for example Intel's customers and/or end-users of the Accused Instrumentalities, to use the Accused Instrumentalities in a manner that would infringe one or more claims of the '300 Patent, including at least claim 1 of the '300 Patent.

179.    On information and belief, Intel furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Instrumentalities, including Intel's models (e.g., Verilog models), reference designs, or drivers (e.g., low level drivers, software drivers, and middleware), and markets and advertises the Accused Instrumentalities on its website and through its Authorized Distributors, to induce third parties, including Intel's customers and/or end-users of the Accused Instrumentalities, to use the Accused Instrumentalities in a manner that would infringe one or more claims of the '300 Patent, including at least claim 1 of the '300 Patent. This includes purchasing and/or importing the Accused Instrumentalities in the United States, incorporating the Accused Instrumentalities into electronic devices and selling or importing those electronic devices into the United States, distributing the Accused Instrumentalities as an Authorized Distributor of Intel, and using the Accused Instrumentalities or electronic devices incorporating the Accused Instrumentalities in the United States.

180.    As to Intel Foundry Customers, Intel actively encourages its Intel Foundry Customers to use Intel's infringing fabrication processes to make Accused Instrumentalities; Intel further instructs, directs, and requires the performance of such fabrication processes through the implementation of designs and rules. In addition to marketing and advertising materials, Intel provides its Intel Foundry Customers with technical and engineering support through EDA tools and PDKs to facilitate Intel Foundry Customers' use of Intel's fabrication processes.

181.    Intel also had actual knowledge of the '300 Patent, and its infringement thereof, no later than the date of filing of this Complaint.

182.    Therefore, Intel has induced infringement by others of one or more of the claims of the '300 Patent, including at least claim 1, with the specific intent to induce acts that constitute infringement of the '300 Patent and with knowledge that such acts infringed one or more claims of the '300 Patent, including at least claim 1 of the '300 Patent.

183.    At least as of the filing of this Complaint, in violation of 35 U.S.C. § 271(c), Intel is infringing the '300 Patent indirectly by contributing to the infringement by third parties of one or more claims of the '300 Patent, including at least claim 1, in the United States and this District. For example, Intel customers, including Intel Foundry Customers, directly infringe by at least the use, sale, offer to sell and importation into the United States of products that incorporate the Accused Instrumentalities.

184.    The Accused Instrumentalities have no substantial non-infringing uses and are a material part of not only Intel's processor products, but also are a material part of downstream products that incorporate such processors or chiplets.

185.    Intel's infringement of one or more claims of the '300 Patent, including at least claim 1 of the '300 Patent, is, and continues to be, willful.

186.     Despite this knowledge, Intel continues to infringe, both directly and indirectly, one or more claims of the '300 Patent, including at least claim 1 of the '300 Patent, in disregard of MOSAID's patent rights. Accordingly, Intel deliberately and intentionally infringes the '300 Patent, and continues to do so, after receiving express and actual knowledge of both the '300 Patent and its infringement thereof.

187.     Therefore, Intel's infringement of the '300 Patent is and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling MOSAID to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT VII: INFRINGEMENT OF THE '215 PATENT

188.     MOSAID incorporates by reference and realleges each of the preceding paragraphs as if specifically set forth herein.

189.     For purposes of MOSAID's infringement allegations for the '215 Patent, the "Accused Instrumentalities" include, but are not limited to instrumentalities made using an 22FFL, Intel 16, Intel 3, or Intel 4 fabrication process and other instrumentalities that Intel has made using the same or similar Intel fabrication processes, including, but not limited to, instrumentalities made for Intel Foundry Customers.

190.     In violation of 35 U.S.C. § 271(a), Intel is and has been directly infringing one or more of the claims of the '215 Patent, including at least claim 1, by making at least the Accused Instrumentalities using the claimed methods of the '215 Patent and further using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authority, at least the Accused Instrumentalities that were made by the claimed methods of the '215 Patent.

191.     Intel is infringing one or more claims of the '215 Patent, including at least claim 1, literally and/or under the doctrine of equivalents. *See* Exhibit R.

192.    In violation of 35 U.S.C. § 271(g), Intel is and has been, without authority, importing into the United States and/or offering to sell, selling, or using within the United States Accused Instrumentalities that are manufactured using the claimed processes of one or more of the claims of the '215 Patent, including at least claim 1. For example, Intel manufactures at least one or more of the Accused Instrumentalities at Intel's Fab 24 and Fab 34 located in Leixlip, Ireland. On information and belief, at least some of such Accused Instrumentalities are imported into the United States.

193.    In violation of 35 U.S.C. §§ 271(b) and 271(c), Intel is and has been indirectly infringing one or more of the claims of the '215 Patent, including at least claim 1, by inducing and contributing to the direct infringement of third parties, such as, for example, Intel Foundry Customers, Intel subsidiaries, and/or other entities related to Intel that are involved in the operation and management of Intel's fabs. Intel actively encourages such third parties to use Intel's infringing fabrication processes to make Accused Instrumentalities; Intel further instructs, directs, and requires the performance of such fabrication processes through the implementation of designs and rules. In addition to marketing and advertising materials, Intel provides such third parties with technical and engineering support through EDA tools and PDKs to facilitate the use of Intel's fabrication processes. These third parties directly infringe by practicing the fabrication processes to make Accused Instrumentalities. Intel Foundry Customers and Intel Fabrication Partners further directly infringe by at least the use, sale, offer to sell and importation into the United States of Accused Instrumentalities and/or products that incorporate Accused Instrumentalities.

194.    Intel has actual knowledge of the '215 Patent, and its infringement thereof, no later than the date of filing of this Complaint.

195.    Intel specifically intends that its Intel Foundry Customers and Intel Fabrication Partners use Intel's infringing fabrication process to produce Accused Instrumentalities and knew that Intel Foundry Customers' use, sale, offer to sell, and importation into the United States of Accused Instrumentalities and/or products that incorporate the Accused Instrumentalities would constitute direct infringement.

196.    Intel's fabrication process technology, and the Accused Instrumentalities have no substantial non-infringing uses and are a material part of not only Intel's fabrication processes and processor products, but also are a material part of downstream products that incorporate such processors.

197.    Intel's infringement of one or more claims of the '215 Patent, including at least claim 1 of the '215 Patent, has been, and continues to be, willful.

198.    Intel continues to infringe one or more claims of the '215 Patent including at least claim 1 of the '215 Patent, in disregard of MOSAID's patent rights. As a result, Intel deliberately and intentionally infringed the '215 Patent, and continues to do so, after receiving express and actual knowledge of both the '215 Patent and its infringement thereof.

199.    Therefore, Intel's infringement of the '215 Patent has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling MOSAID to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT VIII: INFRINGEMENT OF THE '091 PATENT

200.    MOSAID incorporates by reference and realleges each of the preceding paragraphs as if specifically set forth herein.

201.    For purposes of MOSAID's infringement allegations for the '091 Patent, the "Accused Instrumentalities" include, but are not limited to instrumentalities made using an 22FFL,

Intel 16, Intel 3, or Intel 4 fabrication process and other instrumentalities that Intel has made using the same or similar Intel fabrication processes, including, but not limited to, instrumentalities made for Intel Foundry Customers.

202.    In violation of 35 U.S.C. § 271(a), Intel is and has been directly infringing one or more of the claims of the '091 Patent, including at least claim 11, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authority, at least the Accused Instrumentalities. For example, Intel sells to businesses and distributors, including Authorized Distributors, who use, sell, or import the Accused Instrumentalities or electronic devices incorporating the Accused Instrumentalities into the United States. Intel also makes the Accused Instrumentalities in, or imports the Accused Instrumentalities into, the United States.

203.    Intel infringes one or more claims of the '091 Patent, including at least claim 1, literally and/or under the doctrine of equivalents. *See* Exhibit S.

204.    In violation of 35 U.S.C. § 271(b), Intel is and has been infringing one or more of the claims of '091 Patent, including at least claim 11, indirectly by inducing the infringement of one or more claims of '091 Patent, including at least claim 11, by third parties, including for example Intel's customers and/or end-users, in this District and elsewhere in the United States. Direct infringement by, for example, Intel's customers and/or end-users occurs by at least the use of the Accused Instrumentalities.

205.    On information and belief, Intel supplies processor products, that are especially made or especially adapted to practice the inventions claimed in the '091 Patent, including at least claim 11 of the '091 Patent, to induce third parties, including for example Intel's customers and/or

end-users, to use the Accused Instrumentalities in a manner that would infringe one or more claims of the '091 Patent, including at least claim 11 of the '091 Patent.

206.    On information and belief, Intel furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Instrumentalities, including Intel's models (e.g., Verilog models), reference designs, or drivers (e.g., low level drivers, software drivers, and middleware), and markets and advertises the Accused Instrumentalities on its website and through its Authorized Distributors, to induce third parties, including Intel's customers and/or end-users, to use the Accused Instrumentalities in a manner that would infringe one or more claims of the '091 Patent, including at least claim 11 of the '091 Patent. This includes purchasing and/or importing the Accused Instrumentalities in the United States, incorporating the Accused Instrumentalities into electronic devices and selling or importing those electronic devices into the United States, distributing the Accused Instrumentalities as an Authorized Distributor of Intel, and using the Accused Instrumentalities or electronic devices incorporating the Accused Instrumentalities in the United States.

207.    As to Intel Foundry Customers, Intel actively encourages its Intel Foundry Customers to use Intel's infringing fabrication processes to make Accused Instrumentalities; Intel further instructs, directs, and requires the performance of such fabrication processes through the implementation of designs and rules. In addition to marketing and advertising materials, Intel provides its Intel Foundry Customers with technical and engineering support through EDA tools and PDKs to facilitate Intel Foundry Customers' use of Intel's fabrication processes.

208.    Intel also had actual knowledge of the '091 Patent, and its infringement thereof, no later than the date of filing of this Complaint.

209.    Therefore, Intel has induced infringement by others of one or more of the claims of the '091 Patent, including at least claim 11, with the specific intent to induce acts that constitute infringement of the '091 Patent and with knowledge that such acts infringed one or more claims of the '091 Patent, including at least claim 11 of the '091 Patent.

210.    At least as of the filing of this Complaint, in violation of 35 U.S.C. § 271(c), Intel is infringing the '091 Patent indirectly by contributing to the infringement by third parties of one or more claims of the '091 Patent, including at least claim 11, in the United States and this District. For example, Intel customers, including Intel Foundry Customers, directly infringe by at least the use, sale, offer to sell and importation into the United States of products that incorporate the Accused Instrumentalities.

211.    The Accused Instrumentalities have no substantial non-infringing uses and are a material part of not only Intel's processor products, but also are a material part of downstream products that incorporate such processors or chiplets.

212.    Intel's infringement of one or more claims of the '091 Patent, including at least claim 11 of the '091 Patent, is, and continues to be, willful.

213.    Despite this knowledge, Intel continues to infringe, both directly and indirectly, one or more claims of the '091 Patent, including at least claim 11 of the '091 Patent, in disregard of MOSAID's patent rights. Accordingly, Intel deliberately and intentionally infringes the '091 Patent, and continues to do so, after receiving express and actual knowledge of both the '091 Patent and its infringement thereof.

214.    Therefore, Intel's infringement of the '091 Patent is and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a

pirate, entitling MOSAID to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT IX: INFRINGEMENT OF THE '577 PATENT

215.    MOSAID incorporates by reference and realleges each of the preceding paragraphs as if specifically set forth herein.

216.    For purposes of MOSAID's infringement allegations for the '577 Patent, the "Accused Instrumentalities" include, but are not limited to instrumentalities made using an Intel 10 nm, Intel 7, Intel 4, and Intel 3 fabrication process and other instrumentalities that Intel has made using the same or similar Intel fabrication processes, including, but not limited to, instrumentalities made for Intel Foundry Customers.

217.    In violation of 35 U.S.C. § 271(a), Intel is and has been directly infringing one or more of the claims of the '577 Patent, including at least claim 1, by making at least the Accused Instrumentalities using the claimed methods of the '577 Patent and further using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authority, at least the Accused Instrumentalities that were made by the claimed methods of the '577 Patent.

218.    Intel is infringing one or more claims of the '577 Patent, including at least claim 1, literally and/or under the doctrine of equivalents. *See* Exhibit T.

219.    In violation of 35 U.S.C. § 271(g), Intel is and has been, without authority, importing into the United States and/or offering to sell, selling, or using within the United States Accused Instrumentalities that are manufactured using the claimed processes of one or more of the claims of the '577 Patent, including at least claim 1. For example, Intel manufactures at least one or more of the Accused Instrumentalities at Intel's Fab 34 located in Leixlip, Ireland and at Intel's Fab 28 located in Kiryat Gat, Israel. On information and belief, at least some of such Accused Instrumentalities are imported into the United States.

220.    In violation of 35 U.S.C. §§ 271(b) and 271(c), Intel is and has been indirectly infringing one or more of the claims of the '577 Patent, including at least claim 1, by inducing and contributing to the direct infringement of third parties, such as, for example, Intel Foundry Customers, Intel subsidiaries, and/or other entities related to Intel that are involved in the operation and management of Intel's fabs. Intel actively encourages such third parties to use Intel's infringing fabrication processes to make Accused Instrumentalities; Intel further instructs, directs, and requires the performance of such fabrication processes through the implementation of designs and rules. In addition to marketing and advertising materials, Intel provides such third parties with technical and engineering support through EDA tools and PDKs to facilitate the use of Intel's fabrication processes. These third parties directly infringe by practicing the fabrication processes to make Accused Instrumentalities. Intel Foundry Customers and Intel Fabrication Partners further directly infringe by at least the use, sale, offer to sell and importation into the United States of Accused Instrumentalities and/or products that incorporate Accused Instrumentalities.

221.    Intel has actual knowledge of the '577 Patent, and its infringement thereof, no later than the date of filing of this Complaint.

222.    Intel specifically intends that its Intel Foundry Customers and Intel Fabrication Partners use Intel's infringing fabrication process to produce Accused Instrumentalities and knew that Intel Foundry Customers' use, sale, offer to sell, and importation into the United States of Accused Instrumentalities and/or products that incorporate the Accused Instrumentalities would constitute direct infringement.

223.    Intel's fabrication process technology, and the Accused Instrumentalities have no substantial non-infringing uses and are a material part of not only Intel's fabrication processes and

processor products, but also are a material part of downstream products that incorporate such processors.

224.    Intel's infringement of one or more claims of the '577 Patent, including at least claim 1 of the '577 Patent, has been, and continues to be, willful.

225.    Intel continues to infringe one or more claims of the '577 Patent including at least claim 1 of the '577 Patent, in disregard of MOSAID's patent rights. As a result, Intel deliberately and intentionally infringed the '577 Patent, and continues to do so, after receiving express and actual knowledge of both the '577 Patent and its infringement thereof.

226.    Therefore, Intel's infringement of the '577 Patent has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling MOSAID to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT X: INFRINGEMENT OF THE '909 PATENT

227.    MOSAID incorporates by reference and realleges each of the preceding paragraphs as if specifically set forth herein.

228.    For purposes of MOSAID's infringement allegations for the '909 Patent, the "Accused Instrumentalities" include, but are not limited to instrumentalities made using an Intel 10 nm, Intel 7, Intel 4, and Intel 3 fabrication process and other instrumentalities that Intel has made using the same or similar Intel fabrication processes, including, but not limited to, instrumentalities made for Intel Foundry Customers.

229.    In violation of 35 U.S.C. § 271(a), Intel is and has been directly infringing one or more of the claims of the '909 Patent, including at least claim 1, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authority, at least the Accused Instrumentalities. For example, Intel sells to businesses and distributors,

including Authorized Distributors, who use, sell, or import the Accused Instrumentalities or electronic devices incorporating the Accused Instrumentalities into the United States. Intel also makes the Accused Instrumentalities in, or imports the Accused Instrumentalities into, the United States.

230.    Intel infringes one or more claims of the '909 Patent, including at least claim 1, literally and/or under the doctrine of equivalents. *See* Exhibit U.

231.    In violation of 35 U.S.C. § 271(b), Intel is and has been infringing one or more of the claims of '909 Patent, including at least claim 1, indirectly by inducing the infringement of one or more claims of '909 Patent, including at least claim 1, by third parties, including for example Intel's customers and/or end-users, in this District and elsewhere in the United States. Direct infringement by, for example, Intel's customers and/or end-users occurs by at least the use of the Accused Instrumentalities.

232.    On information and belief, Intel supplies processor products, that are especially made or especially adapted to practice the inventions claimed in the '909 Patent, including at least claim 1 of the '909 Patent, to induce third parties, including for example Intel's customers and/or end-users, to use the Accused Instrumentalities in a manner that would infringe one or more claims of the '909 Patent, including at least claim 1 of the '909 Patent.

233.    On information and belief, Intel furnishes instructive materials, technical support, and information concerning the operation and use of the Accused Instrumentalities, including Intel's models (e.g., Verilog models), reference designs, or drivers (e.g., low level drivers, software drivers, and middleware), and markets and advertises the Accused Instrumentalities on its website and through its Authorized Distributors, to induce third parties, including Intel's customers and/or end-users, to use the Accused Instrumentalities in a manner that would infringe one or more claims

of the '909 Patent, including at least claim 1 of the '909 Patent. This includes purchasing and/or importing the Accused Instrumentalities in the United States, incorporating the Accused Instrumentalities into electronic devices and selling or importing those electronic devices into the United States, distributing the Accused Instrumentalities as an Authorized Distributor of Intel, and using the Accused Instrumentalities or electronic devices incorporating the Accused Instrumentalities in the United States.

234.    Intel also had actual knowledge of the '909 Patent, and its infringement thereof, no later than the date of filing of this Complaint.

235.    Therefore, Intel has induced infringement by others of one or more of the claims of the '909 Patent, including at least claim 1, with the specific intent to induce acts that constitute infringement of the '909 Patent and with knowledge that such acts infringed one or more claims of the '909 Patent, including at least claim 1 of the '909 Patent.

236.    At least as of the filing of this Complaint, in violation of 35 U.S.C. § 271(c), Intel is infringing the '909 Patent indirectly by contributing to the infringement by third parties of one or more claims of the '909 Patent, including at least claim 1, in the United States and this District. For example, Intel customers, including Intel Foundry Customers, directly infringe by at least the use, sale, offer to sell and importation into the United States of products that incorporate the Accused Instrumentalities.

237.    The Accused Instrumentalities have no substantial non-infringing uses and are a material part of not only Intel's processor products, but also are a material part of downstream products that incorporate such processors or chiplets.

238.    Intel's infringement of one or more claims of the '909 Patent, including at least claim 1 of the '909 Patent, is, and continues to be, willful.

239.    Despite this knowledge, Intel continues to infringe, both directly and indirectly, one or more claims of the '909 Patent, including at least claim 1 of the '909 Patent, in disregard of MOSAID's patent rights. Accordingly, Intel deliberately and intentionally infringes the '909 Patent, and continues to do so, after receiving express and actual knowledge of both the '909 Patent and its infringement thereof.

240.    Therefore, Intel's infringement of the '909 Patent is and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling MOSAID to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT XI: INFRINGEMENT OF THE '433 PATENT

241.    MOSAID incorporates by reference and realleges each of the preceding paragraphs as if specifically set forth herein.

242.    For purposes of MOSAID's infringement allegations for the '433 Patent, the "Accused Instrumentalities" include, but are not limited to instrumentalities made using an Intel 10 nm and Intel 7 fabrication process and other instrumentalities that Intel has made using the same or similar Intel fabrication processes, including, but not limited to, instrumentalities made for Intel Foundry Customers.

243.    In violation of 35 U.S.C. § 271(a), Intel is and has been directly infringing one or more of the claims of the '433 Patent, including at least claim 8, by making at least the Accused Instrumentalities using the claimed methods of the '433 Patent and further using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authority, at least the Accused Instrumentalities that were made by the claimed methods of the '433 Patent.

244.    Intel is infringing one or more claims of the '433 Patent, including at least claim 8, literally and/or under the doctrine of equivalents. *See* Exhibit V.

245.    In violation of 35 U.S.C. § 271(g), Intel is and has been, without authority, importing into the United States and/or offering to sell, selling, or using within the United States Accused Instrumentalities that are manufactured using the claimed processes of one or more of the claims of the '433 Patent, including at least claim 8. For example, Intel manufactures Accused Instrumentalities at Intel's Fab 28 located in Kiryat Gat, Israel. On information and belief, at least some of such Accused Instrumentalities are imported into the United States.

246.    In violation of 35 U.S.C. §§ 271(b) and 271(c), Intel is and has been indirectly infringing one or more of the claims of the '433 Patent, including at least claim 8, by inducing and contributing to the direct infringement of third parties, such as, for example, Intel Foundry Customers, Intel subsidiaries, and/or other entities related to Intel that are involved in the operation and management of Intel's fabs. Intel actively encourages such third parties to use Intel's infringing fabrication processes to make Accused Instrumentalities; Intel further instructs, directs, and requires the performance of such fabrication processes through the implementation of designs and rules. In addition to marketing and advertising materials, Intel provides such third parties with technical and engineering support through EDA tools and PDKs to facilitate the use of Intel's fabrication processes. These third parties directly infringe by practicing the fabrication processes to make Accused Instrumentalities. Intel Foundry Customers and Intel Fabrication Partners further directly infringe by at least the use, sale, offer to sell and importation into the United States of Accused Instrumentalities and/or products that incorporate Accused Instrumentalities.

247.    Intel has actual knowledge of the '433 Patent, and its infringement thereof, no later than the date of filing of this Complaint.

248.    Intel specifically intends that its Intel Foundry Customers and Intel Fabrication Partners use Intel's infringing fabrication process to produce Accused Instrumentalities and knew

that Intel Foundry Customers' use, sale, offer to sell, and importation into the United States of Accused Instrumentalities and/or products that incorporate the Accused Instrumentalities would constitute direct infringement.

249.    Intel's fabrication process technology, and the Accused Instrumentalities have no substantial non-infringing uses and are a material part of not only Intel's fabrication processes and processor products, but also are a material part of downstream products that incorporate such processors.

250.    Intel's infringement of one or more claims of the '433 Patent, including at least claim 8 of the '433 Patent, has been, and continues to be, willful.

251.    Intel continues to infringe one or more claims of the '433 Patent including at least claim 8 of the '433 Patent, in disregard of MOSAID's patent rights. As a result, Intel deliberately and intentionally infringed the '433 Patent, and continues to do so, after receiving express and actual knowledge of both the '433 Patent and its infringement thereof.

252.    Therefore, Intel's infringement of the '433 Patent has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling MOSAID to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## DAMAGES

253.    MOSAID incorporates by reference and realleges paragraphs each of the preceding paragraphs as if specifically set forth herein.

254.    Intel's acts of infringement have caused damages to MOSAID, and MOSAID is entitled to recover the damages it has sustained as a result of Intel's wrongful acts in an amount to be determined at trial.

255.    MOSAID is entitled to, and now seeks to recover, damages in an amount not less than the minimum amount permitted by law caused by Intel's acts of infringement.

256.    As a result of Intel's acts of infringement, MOSAID has suffered actual and consequential damages. To the fullest extent permitted by law, MOSAID seeks recovery of damages in an amount to compensate for Intel's infringement. MOSAID further seeks any other damages to which MOSAID would be entitled to in law or in equity.

## INJUNCTIVE RELIEF

257.    Intel's acts of infringement have caused—and unless restrained and enjoined, Intel's acts of infringement will continue to cause—irreparable injury and damage to MOSAID for which MOSAID has no adequate remedy at law. Unless enjoined by this Court, Intel will continue to infringe the claims of the Asserted Patents.

## ATTORNEYS' FEES

258.    MOSAID is entitled to recover reasonable and necessary attorneys' fees under applicable law.

## DEMAND FOR JURY TRIAL

259.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, MOSAID demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, MOSAID prays for judgment and requests that the Court find in its favor and against Intel. MOSAID respectfully requests that the Court enter preliminary and final orders, declarations, and judgments against Intel as are necessary to provide MOSAID with the following relief:

a.    A judgment that Intel has infringed and/or is infringing one or more claims of the Asserted Patents, literally or under the doctrine of equivalents, as alleged above;

b.     A judgment that Intel has infringed and/or is infringing one or more claims of the Asserted Patents, directly, as alleged above;

c.     A judgment that Intel has infringed and/or is infringing one or more claims of the Asserted Patents, indirectly, as alleged above;

d.     A judgment that Intel's infringement of the claims of the Asserted Patents is willful;

e.     An award for all damages and costs arising out of Intel's infringement, to adequately compensate MOSAID for Intel's infringement of the Asserted Patents, but in no event less than a reasonable royalty, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

f.     Pre-judgment and post-judgment interest, jointly and severally, in an amount according to proof;

g.     Treble damages based on Intel's willful infringement;

h.     An accounting of damages and any future compensation due to MOSAID for Intel's infringement (past, present, or future) not specifically accounted for in a damages award (or other relief), and/or permanent injunctive relief;

i.     A judgment that this case is exceptional and an award of reasonable attorneys' fees as provided by 35 U.S.C. § 285 and enhanced damages as provided by 35 U.S.C. § 284;

j.     An award of costs of suit;

k.     The entry of an order enjoining and restraining Intel and its parents, affiliates, subsidiaries, officers, agents, servants, employees, attorneys, successors, and assigns and all persons in active concert or participation therewith, from making, importing, using, offering for sale, selling, or causing to be sold any product falling within

the scope of any claim of the Asserted Patent, or otherwise infringing or inducing infringement of any claim of the Asserted Patents; and

l.      All further relief in law or in equity as the Court may deem just and proper.

Dated: May 6, 2025

Respectfully submitted,

*/s/ Jamie H. McDole*

**Max Ciccarelli**     (SBN 00787242)
**CICCARELLI LAW FIRM**
100 N 6th Street, Suite 503
Waco, Texas 76701
Telephone: 214-444-8869
Email: max@ciccarellilawfirm.com

**Jamie H. McDole**     (SBN 24082049)
    Lead Counsel
**Phillip B. Philbin**     (SBN 15909020)
**Michael D. Karson**     (SBN 24090198)
**Miranda Y. Jones**     (SBN 24065519)
**David A. Neal**     (SBN 24144868)
**Cody M. Carter**     (SBN 24131091)
**Matthew L. Vitale**     (SBN 24137699)
**WINSTEAD PC**
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Tel.: (214) 745-5400
Fax: (214) 745-5390
Email: jmcdole@winstead.com
        pphilbin@winstead.com
        mkarson@winstead.com
        mjones@winstead.com
        dneal@winstead.com
        ccarter@winstead.com
        mvitale@winstead.com

**Austin C. Teng**     (SBN 24093247)
**Daniel S. Shuminer**   (SBN 24124688)
**WINSTEAD PC**
600 W. 5th Street, Suite 900
Austin, Texas 78701
Tel.: (512) 370-2800
Fax: (512) 370-2850
Email: ateng@winstead.com
        dshuminer@winstead.com

*Attorneys for Plaintiff*
*MOSAID Technologies Inc.*